**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 15-cv-02674-MSK-CBS

**HAROLD E. MASON,**

 **Plaintiff,**

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY,**

 **Defendant.**

---

## ORDER ON ADMINISTRATIVE RECORD

---

 **THIS MATTER** comes before the Court for review of Reliance Standard Life Insurance

Company's denial of long term disability benefits to Plaintiff Harold E. Mason under an insurance

plan governed by the Employment Retirement Income Security Act of 1974, 28 U.S.C. § 1001, *et*

*seq.* ("ERISA"). The parties filed an Administrative Record (**# 30**) and a joint motion for a ruling

on that Record (**# 37**) which reflected the parties' agreement that the matter should be determined

on the briefs (**# 31, 32, 36**).

## JURISDICTION

 The parties agree that the Plaintiff's claim is governed by ERISA and the Court exercises

subject matter jurisdiction pursuant to 29 U.S.C. § 1132(a)(1)(B).

## ADMINISTRATIVE RECORD AND PROCEDURAL HISTORY

 LSI Corporation (LSI) was Mr. Mason's employer. LSI provided Mr. Mason with

long-term disability and life insurance through a policy ("the Policy") issued by Reliance Standard

Life Insurance Company ("Reliance"). Under the terms of the Policy, Mr. Mason is eligible for

1

long-term disability benefits if, due to injury or sickness, he cannot perform his "regular occupation." However, the Policy delays the onset of benefits for a 364-day "Elimination Period," during which Mr. Mason must remain "totally disabled."

### A.  Mr. Mason's relevant work and medical history

Mr. Mason's job at LSI was as the Director of Industry Marketing. According to the position description, he was required to represent LSI in meetings and public fora, support marketing efforts, exhibit leadership in promoting LSI products, maintain membership in over fifty groups, lead funding for research programs, forecast budgets, and communicate and speak at industry events. Approximately 50-80% of Mr. Mason's job involved traveling. For example, in 2007, Mr. Mason travelled in excess of 66,000 miles. Mr. Mason's job required only minimal physical activity, but considerable mental and cognitive abilities.

Beginning in 2007, Mr. Mason was diagnosed with viral hepatitis (hepatitis B) and chronic cirrhosis of the liver. In mid to late 2008, Mr. Mason's doctor noted that Mr. Mason also showed signs of coronary artery disease. In 2009, Mr. Mason experienced fevers, coughs, abdominal pain, pleural effusion, and other complications from the liver cirrhosis. These symptoms as well as diarrhea, nausea and vomiting continued through at least 2011 resulting in multiple hospitalizations. In 2011, his treating physician, Dr. Karen Cesario, noted that it was likely that Mr. Mason would ultimately need a liver transplant.

Due to his health condition, Mr. Mason stopped working on July 26, 2012 and applied for benefits under the Policy. This triggered the advent of the 364-day Elimination Period. Mr. Mason states that he was no longer able to perform his job due to fevers, nausea, diarrhea, fatigue, and inability to concentrate or manage stress.

After the Elimination Period concluded, Reliance determined that Mr. Mason had not

demonstrated that he had been totally disabled during it (July 26, 2012 – July 26, 2013). As a consequence, Reliance denied Mr. Mason's claim. Mr. Mason appealed the denial, and Reliance referred his appeal to its Quality Review Unit for a review by Dr. Manoj Mehta.

Dr. Mehta reviewed Mr. Mason's medical records but did not perform an in-person medical evaluation. Dr. Mehta opined that Mr. Mason was not totally disabled as of July 26, 2012. According to Dr. Mehta, aside from his portal hypertension, Mr. Mason was asymptomatic. He could travel and his medical condition did not affect his cognitive abilities. Consequently, Reliance also denied Mr. Mason's appeal.

**B.  First lawsuit**

Mr. Mason sought judicial review of Reliance's denial of his long term disability benefits in case 14-cv-01415-MSK-NYW. Upon review of the record, the Court reversed and remanded directing Reliance (1) to resolve an ambiguity in the meaning of "total disability" under the Policy and (2) to consider all of the medical evidence readily available to Reliance pertinent to the Elimination Period between July 2012 to July 2013.

As to the second issue, the Court found that Reliance had not considered all of the evidence available to it, and specifically found that substantial evidence did not support three findings: (1) that Mr. Mason's medical condition did not affect his cognitive abilities because there was no apparent consideration of Dr. Cesario's August 21, 2012 report stating that Mr. Mason suffered from hepatic encephalopathy/slowed thinking or letters from Mr. Mason's colleagues that he suffered from cognitive difficulties before he stopped working; (2) there was no consideration of treatment notes reflecting Mr. Mason's frequent nausea, severe leg swelling, and suppressed immune system, as well as the collective effect of the multiple symptoms, in so far as they impacted his ability to stand, walk, make speeches, and promote LSI products; and (3) that

3

Reliance's finding that Mr. Mason was able to travel was based entirely on a singular, vague treatment note in December 2012 that stated that Mr. Mason "has been travelling quite extensively" that was contradicted by other evidence of record.

### C. Reliance's review on remand

After the remand, Reliance referred the matter to Dr. Mehta, the same doctor who had conducted the earlier record review. On this second go round, it does not appear that Dr. Mehta was provided or considered the Court's opinion pointing out the inadequacy of the prior assessment. Consequently, it is unsurprising that Dr. Mehta again opined, based on a record review, that Mr. Mason's medical condition during the Elimination Period did not affect his cognitive abilities. In addition, Dr. Mehta stated that during such period, Mr. Mason had "essentially had no complaints aside from a hernia."   And, based entirely on the vague December 2012 treatment note, Dr. Mehta again opined that during such period Mr. Mason was able to travel.

Based on Dr. Mehta's second report, Reliance again denied Mr. Mason's claim.   Reliance clarified the Policy ambiguity as to the meaning of "total disability". It stated:

> Mr. Mason would have been considered Totally Disabled if he were Partially Disabled during Elimination Period, in accordance with the Policy provision regarding Residual Disability. For example, if Mr. Mason were unable to perform some of the duties of his Regular Occupation during the Elimination Period, he would have been Partially Disabled and therefore would have satisfied the Policy definition of Total Disability.

Applying this standard, however, Reliance determined that Mr. Mason was not partially disabled during the Elimination Period. According to Reliance, Mr. Mason's medical condition did not affect his cognitive abilities. Without reference to Dr. Cesario's treatment notes of August 21, 2012, Reliance finds that Dr. Cesario did not identify encephalopathy or slowed thinking as symptom until July 11, 2013. Reliance makes no mention of medical records evidencing Mr.

4

Mason's fatigue, frequent nausea, and severe leg swelling affected his ability to perform his job, and once again Reliance relies on the single, ambiguous treatment note in December 2012 note to conclude that he was able to travel.

## STANDARD OF REVIEW

28 U.S.C. § 1132(a)(1)(B) permits a beneficiary of an ERISA-governed insurance plan to bring a suit to recover benefits due under the terms of the plan. In *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 110-11 (2008), the Supreme Court summarized the standard of review employed by courts in such suits: (i) the court must conduct a *de novo* review of the determination unless the plan provides to the contrary; (ii) if the plan provides discretionary authority to the plan administrator to make eligibility determinations, the court should instead apply a deferential arbitrary and capricious standard of review; and (iii) if the plan administrator is operating under a conflict of interest, the nature and extent of that conflict must be "weighed as a factor" in determining whether the plan administrator abused his or her discretion. *See Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231-32 (10th Cir. 2012).

If a court determines that the arbitrary and capricious standard applies, it will reverse a determination on benefits only if it is not supported by substantial evidence, the plan administrator's construction of policy language is unreasonable, or was made in bad faith. *See Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009). Under this standard, the administrator's determination need not be the best or only logical resolution, but it must be reasonably supported by the record. *Nance v. Sun Life Assur. Co.*, 294 F.3d 1263, 1269 (10th Cir. 2002).

A court's review is limited to the materials compiled by the administrator in the course of making its decision—that is, to the administrative record. *See Cardoza v. United of Omaha Life*

5

*Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013). A court considers only the specific grounds upon which the administrator relied in the administrative denial of benefits, not alternative justifications that the administrator could have, but did not, rely upon.[1] *Spradley v. Owens-Ill. Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1141 (10th Cir. 2012).

Here, the Policy grants Reliance discretionary authority to interpret the Policy and determine eligibility for benefits. Therefore, the arbitrary and capricious standard applies. Under an arbitrary and capricious standard, the question is whether the plan administrator's denial of benefits is reasonable in light of the available evidence. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1133 (10th Cir. 2011). If the denial is not supported by substantial evidence it may be unreasonable. *Adamson*, 455 F.3d at 1212-13; *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1002-03 (10th Cir. 2004); *Bishop*, 232 Fed. App'x at 795. Substantial evidence is evidence which a reasonable mind might accept as adequate to support the conclusion reached—it is more than a scintilla but less than a preponderance. *Rekstad v. U.S. Bancorp.*, 451 F.3d 1114, 1119-20 (10th Cir. 2006).

There is no requirement that a plan administrator scour every single record, medical or otherwise, pertaining to a claim and a plan administrator is not required to give special weight to the opinion of a treating physician. *See: Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 806-07 (10th Cir. 2004). *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002). However, a plan administrator must consider and credit a claimant's relevant and reliable evidence, and a

---

[1]Reliance's Response Brief (**# 32**) asserts justifications for denying Mr. Mason's claims that were not included in Reliance's December 8, 2015 denial letter. They include a claim that Mr. Mason traveled to Mexico in 2013 and an argument as to why Dr. Cesario's August 21, 2012 report was not reliable. Inasmuch as they were not asserted in the denial letter, the Court cannot consider them. Reliance simply cannot "treat the administrative process as a trial run and offer a post hoc rationale in district court." *Spradley*, 686 F.3d at 1140-41.

failure to do so may make the resulting decision arbitrary or capricious. For example, a plan administrator cannot ignore readily available information pertaining to the claimant's ability to do his job, particularly when there is little evidence in the record to refute the claimant's position. *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004).

By means of illustration, although a plan administrator need not accept all opinions of a claimant's doctors, failure to explain why it preferred the opinion of its own doctor who reviewed records over the treating physician opinions may render the determination arbitrary or capricious. *See Zhou v. Metro. Life Ins. Co.*, 807 F.Supp.2d 458, 473-74 (D. Md. 2011). It may also be unreasonable for a plan administrator to disregard nonmedical evidence, such as letters from a claimant's family, or for a plan administrator to fail to contact an employer to learn the reasons for a claimant's leave of absence from work. *Rekstad*, 451 F.3d. at 1121; *Gaither*, 394 F.3d at 806.

## ANALYSIS

Mr. Mason contends that Reliance's denial of long term disability benefits on Remand must be reversed because it is arbitrary and capricious. The issue focuses on whether Mr. Mason was disabled during the 364-day Elimination Period, July 26, 2012 to July 25, 2013.

The Policy defines Total Disability as follows:

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:

(1) During the Elimination Period, an Insured cannot perform the material duties of his/her Regular Occupation;

(a) 'Partially Disabled' and 'Partial Disability' mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part time basis or some of the material duties on a full time basis. An Insured who is partially disabled will be considered Totally Disabled, except during the Elimination Period;

7

(b) 'Residual Disability' means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and

On remand, Reliance clarified that during the Elimination Period, Mr. Mason would be Totally Disabled if he was "unable to perform some of his duties". His material duties were previously determined to be (1) promoting sales and goodwill by preparing displays; (2) touring the country; (3) making speeches at conferences; advising individual merchants on ways to increase sales; and (4) in some instances possessing and calling upon technical and engineering knowledge. Physical requirements include lifting, carrying, pushing, or pulling up to 20 pounds occasionally and 10 pounds frequently as well as regular walking or standing. Implicitly, the job also requires regular cognitive functioning.[2] However, Reliance continues to find that Mr. Mason was able to perform the material duties of his occupation on a full-time basis during the Elimination Period, and thus he was not Totally Disabled.

Mr. Mason argues that Reliance's denial of benefits under the Policy after remand was arbitrary and capricious for two reasons – (1) Reliance did not follow the Court's directions on remand and (2) Reliance did not demonstrate consideration of the entire medical record or offer explanation of why it selected contradicted medical evidence. The Court agrees with both arguments.

First, Reliance's finding that Mr. Mason's medical condition did not negatively affect his cognitive abilities is not supported by substantial evidence. Despite the Court's identification of Dr. Cesario's August 21, 2012 report in its prior opinion, both Dr. Mehta and Reliance again ignored it. The report expressly states that Mr. Mason was suffering from "severe fatigue, hepatic encephalopathy/slowed thinking, [and] frequent volume overload." This is corroborated by

---

[2] *See* 14-cv-01415-MSK-NYW (**# 36**).

multiple statements of lay witnesses about his cognitive changes and their adverse impact on his work performance at LSI. Without explanation, Reliance simply repeats Dr. Mehta's prior unsupported statement that the earliest evidence of Mr. Mason's cognitive impairment is found in Dr. Cesario's July 11, 2013 letter. In light of the Court's explicit remand directives, Reliance's failure to consider or address the August 21, 2012 report and the witness statements, is patently arbitrary and capricious.

Reliance also failed to demonstrate consideration of medical records reflecting Mr. Mason's fatigue, frequent nausea, severe leg swelling, and suppressed immune system and effect such symptoms would have had on his ability to perform his material duties as directed on remand. Instead, based on the post-remand opinion of Dr. Mehta, Reliance simply finds that such symptoms did not occur.

Reliance's position in this regard is quite curious. As noted, it does not appear that Dr. Mehta was aware of the Court's directive to consider these symptoms as there is no copy of the Court's order in the documents he purportedly reviewed, and there is no discussion of these symptoms in his post-remand report. In addition, the Court has some question as to whether Dr. Mehta reviewed his earlier report because the findings in the post-remand report contradict his earlier report. After his first record review, Dr. Mehta stated, "As the timeline of events has progressed, one could infer that [Mr. Mason] has become sicker and sicker and at some point has been unable to work."   But his opinion in the post-remand report is that Mr. Mason "essentially had no complaints aside from a hernia."

But more importantly, the Court identified multiple medical records reflecting Mr.

Mason's symptoms of fatigue, nausea, leg swelling and suppressed immune system[3] in its earlier

opinion. None of the symptoms or records have been discussed or evaluated by Dr. Mehta or

Reliance.

Furthermore, Dr. Mehta's justification for concluding that Mr. Mason had no symptoms

other than a hernia during the Elimination Period is premised on a selective reading of the medical

---

[3]Mr. Mason's medical records show serious medical issues during the Elimination Period were as follows:

- August 21, 2012: Dr. Cesario noted that Mr. Mason suffered from "severe fatigue, hepatic encephalopathy/ slowed thinking, frequent volume overload."
- August 23, 2012: Dr. John Campbell observed irregularities in Mr. Mason's liver as well as a thickened gallbladder wall and polyp.
- September 11, 2012: Dr. Eric Whiting observed "severe cirrhosis" and "severe portal hypertension," with manifestations including "edema and mild bowel wall thickening."
- October 1, 2012: Dr. Cesario noted that Mr. Mason had "increasing problems with an umbilical hernia," was experiencing fatigue, and "has struggled with frequent nausea and bilateral severe leg swelling."
- November 15, 2012: Dr. Cesario wrote that Mr. Mason was experiencing portal hypertension and polyps were found in his stomach.
- December 4, 2012: Dr. Cesario reported that Mr. Mason was experiencing fatigue, and indicated that his past complications include "non-bleeding esophageal varices, fatigue, muscle wasting, and hepatic hydrothrax."
- April 1, 2013: Dr. Michael Pitman observed a new lobe and irregular contour of Mr. Mason's liver, chronic inflammatory changes, and recommended further evaluation.
- April 25, 2013: Dr. Timothy Cloonan found that Mr. Mason had an enlarged spleen, a cyst in his lower kidney, and "abnormal nodular contour of the liver."

Dr. Cesario also completed a form for Reliance on June 6, 2013 describing Mr. Mason's condition. She noted that Mr. Mason's first visit occurred in November 2010, and his latest visit was April 2, 2013. During that time Dr. Cesario wrote that Mr. Mason experienced "volume overload, shortness of breath, and altered mental state." Her "objective diagnoses" include "hyperammonemia, hepatic hydrothorax, edema, anemia," and she indicated that Mr. Mason's altered mental state further contributed to his disability. She opined that Mr. Mason should only stand, sit, or walk for 1-3 hours per day and could only carry up to 10 pounds, that is, should only perform fully sedentary work. On July 7, 2013, Dr. Cesario submitted an additional letter to Reliance, in which she represented that Mr. Mason suffers from "chronic nausea, vomiting and fatigue which mandate a strict diet and many breaks." She stated that Mr. Mason's "hepatic encephalopathy causes cognitive changes which would make [him] an undependable employee," and moreover, his immunosuppression makes him susceptible to infections thus he is unable to travel or be around groups of people. She explained that his disease is chronic and progressive.

record. Dr. Mehta apparently relies on a treatment note made in conjunction with an examination on June 10, 2013, Mr. Mason denied fevers, confusion or weight changes. However, Dr. Mehta fails to state that the same treatment note reflects Mr. Mason's fatigue, increased pain, nausea, and vomiting. It is interesting to compare these notes with those taken in conjunction with an October 1, 2012 examination. With regard to the October examination, Dr. Mehta reports that Mr. Mason denied fever, vomiting and confusion, but Dr. Mehta fails to state the notes also show that Mr. Mason reported fatigue and leg swelling. Such "cherry picking" of medical records is, by definition, arbitrary and capricious. *Smith v. Reliance Standard Ins. Co.* 322 F. Supp. 2d 1168, 1177 (D. Colo. 2004).

Thus the Court finds that Reliance not only failed to consider the effect of Mr. Mason's fatigue, frequent nausea, severe leg swelling, and suppressed immune system on his ability to perform his material duties as directed, its determination that Mr. Mason's health during the Elimination Period was unaffected, except by a hernia, is not supported by substantial evidence.

Finally, Reliance's finding that Mr. Mason was able to travel during the Elimination Period remains problematic. In his second record review, Dr. Mehta again relied solely on a vague reference in December 2012 treatment notes that Mr. Mason "has been traveling quite extensively". Because it is not clear from the statement whether the travel occurred before or during the Elimination Period, the Court previously found this statement to be ambiguous and insufficient to support a finding that Mr. Mason was able to travel during the Elimination Period. Reliance's attempt to bolster it by observing that there was no mention of travel at a prior appointment in October and thus the travel likely occurred between October and December is unavailing for several reasons.

Reliance's finding appears to be based on pure speculation. Reliance points to no medical

11

records that suggest that each medical examination reports the extent of travel taken since the prior examination, nor any non-medical records that evidence Mr. Mason's travel between October and December. Indeed, the full administrative record shows that frequent flyer records reflect a significant decline in his travel before he stopped working at LSI, his coworkers' statements that he suffered severe nausea and vomiting, convulsions, fatigue, fevers, and the inability to concentrate prevented him from travelling, and his domestic partner's children's statements that Mr. Mason's last significant personal travel occurred in 2010. There is nothing to suggest that Reliance considered this evidence or any statement of what evidence it considered other than the ambiguous treatment note itself. Accordingly, the Court finds that Reliance's determination that Mr. Mason could travel during the Elimination Period is not supported by substantial evidence.[4]

## CONCLUSION

In summary, Mr. Mason is entitled to benefits if, during the Elimination Period, he was capable of performing the material duties of his occupation on a part time basis or only some of the material duties on a full time basis. Reliance's denial of benefits is not supported by substantial evidence or an apparent review of all evidence in the record. Accordingly, such decision is to be arbitrary and capricious.

The Court **REVERSES** the denial of Mr. Mason's long term disability claim. Reliance having had the opportunity to reconsider, no remand is justified.

Judgment shall enter in favor of Mr. Mason and against Reliance awarding Mr. Mason

---

[4]The Court notes that even if Mr. Mason traveled between October and December, 2012, his travel would not necessarily prevent him from being Totally Disabled under the Policy. Reliance has clarified that Mr. Mason would be Totally Disabled if he was unable to perform some of his duties during the Elimination Period. He had multiple duties, including travel. If he was unable to perform other duties but was able to travel, he still could be Totally Disabled under the Policy terms.

long term disability benefits from July 2013 according to the terms of the Policy.

In Mr. Mason's Opening Brief (**# 31**), he requested an award of reasonable attorney fees, interest, and costs but did not submit an affidavit complying with D.C. Colo. Civ. R. 54.3. If Mr. Mason still wishes to pursue this request, he shall submit a motion and affidavit complying with D.C. Colo. Civ. R. 54.3 within 21 days of entry of this order.

DATED this 22nd day of March, 2017.

**BY THE COURT:**

_____

Marcia S. Krieger